# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RATCLIFF,<br><br>   Plaintiff,<br><br>   v.<br><br>J. AKANNO, et al.,<br><br>   Defendants. | Case No.: 1:16-cv-00584-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT J. AKANNO'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 53] |

Plaintiff William Ratcliff is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant J. Akanno's motion for summary judgment, filed on March 28, 2018.

## I.

## PROCEDURAL HISTORY

This action is proceeding against Defendants J. Akanno, M. Spaeth, Ogun Omolade, A. Rangel, and A. Manasrah for deliberate indifference to Plaintiff's health and safety in violation of the Eighth Amendment.[1]

On May 17, 2017, Defendants Manasrah, Rangel and Spaeth filed an answer to the complaint. (ECF No. 25.)

On May 18, 2017, the Court issued the discovery and scheduling order. (ECF No. 26.)

---

[1] Defendant Akanno is represented by Nicole Cahill, and Defendants Spaeth, Ogun Omolade, A. Rangel, and A. Manasrah are represented by Deputy Attorney General Catherine Woodbridge.

1

On June 8, 2017, Defendant Omolade filed an answer to the complaint. (ECF No. 28.) On June 9, 2017, the Court extended the discovery and scheduling order to Defendant Omolade. (ECF No. 29.)

On September 6, 2017, Defendant Akanno filed an answer to the complaint. (ECF No. 44.) On September 7, 2017, the Court extended the discovery and scheduling order to Defendant Akanno. (ECF No. 45.)

As previously stated on March 28, 2018, Defendant Akanno filed a motion for summary judgment. (ECF No. 53.)

On March 29, 2018, Defendants Manasrah, Omolade, Rangel, and Spaeth filed a motion for summary judgment.[2] (ECF No. 54.)

After receiving three extensions of time, Plaintiff filed oppositions to both of Defendants' motions for summary judgment on June 21, 2018, respectively. (ECF Nos. 66, 67.)

Defendant Akanno filed a reply and objections on June 28, 2018. (ECF Nos. 70, 71.)

Therefore, Defendant Akanno's motion for summary judgment is deemed submitted for review, without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required

---

[2] This motion for summary judgment will be addressed by issuance of a separate Findings and Recommendation in due course.

to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

In April 2010, Plaintiff suffered from severe ulnar neuropathy at the wrist, soft tissue inflammation, tendon swelling with inflammation, unusual weakness and numbness. Plaintiff was under treatment by prison health staff for this serious medical condition, and Plaintiff was informed by Physician Dennis G. Patterson that he would need surgery. Plaintiff was issued a lower bunk chrono by Dennis G. Patterson.

On December 8, 2012, while housed at Calipatria State Prison, Plaintiff sustained trauma during an assault and was air lifted to Desert Regional Medical Center. Plaintiff suffered multiple contusions and fractures to his lower back and left shoulder.

On November 23, 2013, Plaintiff was transferred to Kern Valley State Prison (KVSP). While housed at KVSP, Defendant Ogun Omolade took Plaintiff's lower bunk chrono without Plaintiff's knowledge and without contacting Plaintiff to explain why the chrono was no longer necessary.

Defendant Omolade, as a medical examiner, has access to the computer medical file to determine any medication taken by Plaintiff. Had Omolade checked the medical file, he would have discovered how the extent of Plaintiff's injuries.

On May 22, 2015, Plaintiff slipped and fell off the desk stool while trying to climb onto the upper bunk and sustained an injury to back of his head which required stitches. Plaintiff re-injured his lower back and upper left shoulder. On this same date, Plaintiff completed a health care service

request form and complained to Defendant Rangel about the injury to Plaintiff's shoulder and back. Plaintiff was experiencing excruciating and agonizing pain. Defendant Rangel stated that these injuries normally go away after several months and suggested that Plaintiff exercise and try not to bend too much.

Defendant Rangel delayed diagnosis and delayed Plaintiff from getting treatment for his lower back and shoulder while Plaintiff was suffering in pain. Defendant Rangel ignored Plaintiff for several weeks before sending him to see a specially trained doctor. Defendant Rangel was aware of Plaintiff's suffering and need for treatment from review of his medical requests. At this time, Plaintiff did not know that he had re-fractured his back and shoulder and that arthritis had set in.

On May 28, 2015, Plaintiff's condition had worsened. Plaintiff was seen the next day, May 29, 2015, by Defendant A. Manasrah. Plaintiff told Manasrah about the assault and the injuries he suffered. Plaintiff requested pain medication and a temporary lower bunk chrono because it was difficult getting to and from the upper bunk. Plaintiff was told that an x-ray was needed before pain medication could be prescribed and a lower bunk chrono was out of the question at that time. Plaintiff contends his x-rays revealed two vertebral fractures and arthritis.

On July 6, 2015, Plaintiff explained to Defendant Akanno about his condition and injuries. Dr. Akanno suggested that Plaintiff continue with the exercise treatment which he knew was ineffective or caused substantial risk of harm.

On July 29, 2015, Plaintiff filed another administrative appeal. The appeal was assigned to Defendant Spaeth and with knowledge of Plaintiff's medical condition denied the appeal for medical treatment.

**B. Statement of Undisputed Facts[3]**

1. Dr. Akanno was employed with the California Department of Corrections and Rehabilitation ("CDCR") from March of 2003 through December of 2016. (Declaration of Dr. Akanno ["Akanno Decl."] ¶ 1, Ex. 1.)

2. Dr. Akanno's job title in July of 2015 and throughout his work at CDCR was physician

---

[3] Hereinafter referred to as "UDF".

4

and surgeon. (Akanno Decl. ¶ 3.)

3. As a physician, Dr. Akanno was assigned a "yard," which is a designated section of the prison. (Akanno Decl. ¶ 4.)

4. Inmates housed within a particular yard were assigned to Dr. Akanno during his shift. (Akanno Decl. ¶ 4.)

5. Dr. Akanno's duty as a yard physician was to provide appropriate health care within the scope of his licensure. (Akanno Decl. ¶ 4.)

6. Responding to medical (602) appeals from inmate-patients was part of Dr. Akanno's responsibilities as a yard physician. (Akanno Decl. ¶ 5.)

7. Yard physicians may issue lower bunk accommodations, or lower bunk "chronos." (Akanno Decl. ¶ 6.)

8. Lower bunk chronos are issued by physicians when an inmate suffers from some physical condition that satisfies criteria set by either Department of institutional policy. (Akanno Decl. ¶ 6.)

9. Lower bunk chronos entitle an inmate to the lower bunk in the cell to which he is assigned. (Akanno Decl. ¶ 6.)

10. Some of the criteria for issuance of a lower bunk chrono include: seizure disorder; neurological conditions such as dizziness; morbid obesity; acute recovery from spinal surgery or orthopedic surgery on extremities; orthostatic hypotension (sudden loss of blood pressure caused by sudden change in position); chronic lower extremity edema (swelling); chronic venous stasis wounds (chronic loss of circulation in the legs that can lead to swelling, skin changes and ulcers); or insufficient strength or motion to transfer to an upper bunk. (Akanno Decl. ¶ 6.)

11. Inmates frequently request lower bunk chronos and the criteria are strictly applied. (Akanno Decl. ¶ 6.)

12. Physicians use their medical training and experience to determine if a patient meets the established criteria for a lower bunk chrono. (Akanno Decl. ¶ 6.)

13. Dr. Akanno was a licensed medical doctor with the Medical Board of California during his career with CDCR. (Akanno Decl. ¶ 7.)

14. Dr. Akanno completed the minimum of fifty hours of approved Continuing Medical Education (CME) required during each biennial renewal cycle for the maintenance of his medical license. (Akanno Decl. ¶ 7.)

15. Dr. Akanno has attended several professional, medical presentations that focused on the standard of care for the treatment of chronic pain and the move away from the use of opioid based medications for the treatment of that pain. (Akanno Decl. ¶ 8.)

16. The standard of care for a patient suffering from intense pain as a result of an injury calls for the use of opioid-based medications, if necessary at all, for less than a week. (Akanno Decl. ¶ 9.)

17. NSAIDs like Ibuprofen are widely accepted as the standard treatment for chronic conditions like arthritis, degenerative joint disease (DJD), and degenerative disc disease (DDD). (Akanno Decl. ¶¶ 9, 12.)

18. Plaintiff was a convicted prisoner during the relevant time of July of 2015 through September of 2015. (ECF No. 16 at ¶ 1.)

19. Plaintiff was seen by Dr. Akanno on July 6, 2015. (Akanno Decl. ¶ 11, Ex. 2; ECF No. 16 at ¶ 28.)

20. Dr. Akanno's examination of Plaintiff on July 6, 2015 consisted of a physical examination and assessment of prior x-rays taken in January of 2013, review of his prior medical records, assessment of his scalp, shoulder, and lower back.[4] (Akanno Decl. ¶ 11; Ex. 2; Ex. 7, Deposition of William Ratcliff ["Ratcliff Dep."] at 45:15-46:9.)

21. The prior x-rays revealed mild osteoarthritis of the left shoulder and moderate DDD at L 5/S 1 (between lumbar body number 5 and the sacrum). (Akanno Decl. ¶ 11; Ex. 2.)

22. Dr. Akanno's assessment of Plaintiff on July 6, 2015 was that he was suffering from arthritis and degenerative disc and joint disease. (Akanno Decl. ¶ 11, Ex. 2.)

---

[4] In his motion, Defendant references the prior x-rays as being taken in July not January of 2013; however, Dr. Akanno's declaration and supporting evidence clearly demonstrate that the prior x-rays that were reviewed were taken in January and not July 2013, and such error was simply a typo. (Akanno Decl. ¶ 11; Ex. 2.)

23. Exercise can be helpful in alleviating the symptoms of chronic conditions like arthritis and degenerative disc disease.[5]

24. Dr. Akanno ordered x-rays of Plaintiff's shoulder and lower back and ordered Plaintiff to continue taking Ibuprofen. (Akanno Decl. ¶ 12, Ex. C.)

25. Dr. Akanno had renewed Plaintiff's prescription for 600 mg Ibuprofen as "KOP" (keep on person) on May 28, 2015. (Akanno Decl. ¶ 12, Ex. 4.)

26. Dr. Akanno did not issue Plaintiff a lower bunk chrono at any time. (Akanno Decl. ¶ 13, Ex. 5.)

27. In Dr. Akanno's medical opinion, Plaintiff did not qualify for a lower bunk chrono. (Akanno Decl. ¶¶ 13, 14.)

28. Dr. Akanno saw Plaintiff on September 2, 2015. (Akanno Decl. ¶¶ 13, 14, Ex. 5.)

29. In Dr. Akanno's medical opinion, Plaintiff did not qualify for a lower bunk chrono. (Akanno Decl. ¶14, Ex. 5.)

30. Since May of 2015, many of Plaintiff's cell mates have voluntarily allowed him to have the lower bunk. (Pl. Dep. at 89:20-90:3, 90:14-22.)

31. Plaintiff is able to jog and maintains a job at Kern Valley State Prison (KVSP) as a "ADA pusher." (Pl. Dep. at 94:4-7, 94:25-95:5.)

32. Ibuprofen is a non-steroidal anti-inflammatory medication (NSAIDs) that is commonly and appropriately used to treat patients who suffer from orthopedic complaints, including pain from chronic conditions such as degenerative disc disease, arthritis, neck, back, and muscle aches. (Akanno Decl. ¶¶ 8, 12.)

33. Naproxen is a NSAIDs that is commonly and appropriately used to treat patients who suffer from orthopedic complaints including pain from chronic conditions such as degenerative disc disease, arthritis, neck, back, and muscle aches. (Akanno Decl. ¶¶ 8, 12.)

34. Oxcarbazepine (Trileptal) is a medication that can help some patients who suffer from chronic nerve pain when used in conjunction with NSAID's. (Akanno Decl. ¶ 14.)

---

[5] While Plaintiff attempts to dispute this statement by claiming exercise was not helpful to him, Plaintiff's lay opinion does not dispute the medical opinion provided by Dr. Akanno.

7

35. In the last decade or so, the medical field generally has moved away from the treatment of non-acute pain with opioids and narcotics because of the serious side effects and the potential for abuse. (Akanno Decl. ¶ 8.)

### C. Defendant's Objections to Declarations by Plaintiff and Other Inmates

In support of his opposition, Plaintiff submits his declaration along with the declarations of inmates Donald E. Parks, Gerry Williams, and Quinn Cross. Defendant objects to the declarations to the extent certain portions contain expert witness opinion for which these individuals are not qualified to provide. Defendant's objections are sustained.

With regard to the declaration of Donald E. Parks, Defendant objects to the opinion that Plaintiff "reinjured his back and shoulder and that he was required to provide Plaintiff his lower bunk chrono "to prevent any further injury." (Declaration of Donald E. Parks at 1:12-13; 1:22-23.

With regard to the declaration of Gerry Williams, Defendant objects to the opinion that Plaintiff "reinjured his back and shoulder", that Plaintiff had "chronic pain," and that he assisted Plaintiff to "prevent any further injury." (Declaration of Gerry Williams at ¶¶ 1, 3. 4.)

With regard to the declaration of Quinn Cross, Defendant objects to the opinion that Plaintiff "broke his back." (Declaration of Quinn Cross at 2:2-3.)

With regard to the declaration of Plaintiff, Defendant objects to his opinion that he suffered pain due to arthritis in his feet and "severe ulnar neuropathy at the wrist." (Declaration of Plaintiff at ¶ 6.)

An opinion regarding any aspect of Plaintiff's medical condition and/or care is beyond that of a lay witness and requires opinion by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Therefore, the opinions set forth above are improper and Defendant's objections are sustained.

### D. Findings and Analysis of Defendant's Motion

As previously stated, Plaintiff contends that Defendant Dr. Akanno violated his Eighth Amendment rights because he failed to provide him a lower bunk chrono, stronger medication, and x-rays in a timely manner.

///

Defendant argues that he is entitled to summary judgment on Plaintiff's deliberate indifference claim because his claim amounts to nothing more than a difference of opinion with respect to his care which is insufficient as a matter of law. In addition, there is no evidence that Defendant's care fell below the requisite standard of care.

In opposition, Plaintiff argues he complained on a daily basis about his injuries before and after the instant complaint was filed. Plaintiff was seen by Dr. Akanno on several occasions and during each visit, Plaintiff complained of the agonizing and excruciating pain. (Pl. Opp'n at 8, ECF No. 66.) Plaintiff contends that Dr. Akanno knew about his condition way before he re-injured himself on May 22, 2015, but failed to take reasonable measures to abate it. (Id.) Plaintiff further contends that the x-rays revealed his chronic condition and is "ample evidence that [D]efendant Akanno knew [his] condition was serious." (Id. at 9.)

In response, Defendant argues Plaintiff has conceded that his complaint is limited to the July 6, 2015 visit with Dr. Akanno and Plaintiff's references to other visits with Dr. Akanno should be disregarded. In addition, Plaintiff fails to identify what additional treatment or care he sought from Dr. Akanno on July 16, 2015, or how the care provided was inadequate. Furthermore, Plaintiff's opposition rests, in part, on the belief that Dr. Akanno "incorrectly" believed that Plaintiff's injury did not pose a risk of serious harm, and it therefore follows that if he believed there was no risk of serious harm, there can be no deliberate indifference.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680

F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d at 987, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

1. Claim Limited to July 6, 2015 Examination

As an initial matter, the Court agrees with Defendant that the allegations against Dr. Akanno set forth in the operative second amended complaint involve the care provided only on July 6, 2015. (Sec. Amd. Compl. at 5, ECF No. 16; Pl. Dep. 24:20-22; 26:19-27:1; 27:8-11, Ex. 7; see also Pl. Opp'n at p. 6, ECF No. 66.) Plaintiff may not now by way of opposition to motion for summary judgment and/or deposition testimony, expand the scope of her claim. Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011).[6] Accordingly, the focus of Plaintiff's claim against Defendant Dr. Akanno is limited to the encounter on July 6, 2015. In any event, even if the Court allowed Plaintiff to expand his claim, for the reasons explained below there is no evidence of deliberate indifference by Dr. Akanno.

2. Examination and Treatment by Dr. Akanno on July 6, 2015

It is undisputed that on July 6, 2015, Dr. Akanno examined Plaintiff for approximately an hour and assessed his condition as likely a chronic condition, namely, degenerative joint disease and arthritis. (Akanno Decl. ¶ 11, Ex. 2.) More specifically, Dr. Akanno assessed Plaintiff's scalp, left shoulder, and lower back following a fall he sustained sometime in the past. (Akanno Decl. ¶ 11.) He

---

[6] Indeed, Plaintiff was aware based on the Court's screening orders that all factual allegations against the defendants must be included in the operative complaint. (ECF Nos. 11, 14; Pl. Dep. at 23:15-24:8.)

reviewed Plaintiff's universal health record (UHR) and prior x-rays taken in January of 2013. (Id.) Dr. Akanno found minimally reduced abduction and adduction movements to the left shoulder, but otherwise it was normal. (Id.) His prior x-rays revealed moderate degenerative disc disease (DDD) at L 5/S 1 (between lumbar body number 5 and the sacrum). The prior x-rays also revealed mild osteoarthritis (arthritis of the bone) of the left shoulder. Based on Dr. Akanno's examination and training, he ordered Plaintiff to continue on the NSAID treatment he previously prescribed—600mg Ibuprofen—which is consistent with the standard of care for the treatment of chronic issues like arthritis and degenerative joint disease. (Akanno Decl. ¶¶ 8, 9, 11, 12.) Plaintiff contends that he believed Dr. Akanno should have prescribed a stronger medication. (Pl. Dep. at 49:15-18, 50:2-8.) However, Plaintiff's desire and belief a stronger medication was warranted does not give rise to a claim for deliberate indifference. Snow v. McDaniel, 681 F.3d at 987; Wilhelm v. Rotman, 680 F.3d at 1122-23. Indeed, Plaintiff admits that he was unaware that the use of medications such as Ibuprofen was commonly used to treat his conditions. (Pl. Dep. at 55:2-5.) There is simply no evidence that Dr. Akanno was deliberately indifferent to Plaintiff's medical condition on July 6, 2015.

   3. Referral for X-ray Examination

In addition, to continuing Plaintiff's prescription of Ibuprofen, Dr. Akanno ordered x-rays at the July 6, 2015, visit to thoroughly examined Plaintiff's condition. (Akanno Decl. ¶ 12.) Indeed, at his deposition, Plaintiff acknowledged that Dr. Akanno ordered x-rays on July 16, 2015, and the x-rays were conducted three days thereafter. (Pl. Dep. at 53:3-23; Akanno Decl. ¶ 12, Ex. C.)

Plaintiff's appears to now argue that there was a delay in the timeliness of the x-rays ordered by Dr. Akanno. However, it is undisputed that the x-rays were taken three days after Plaintiff's July 6, 2015 visit with Dr. Akanno. In addition, the fact that Dr. Akanno ordered x-rays supports the finding that he was not deliberately indifferent to Plaintiff on July 16, 2015. The x-rays were conducted on July 9, 2015, and confirmed that the pain and restricted motion was due to chronic arthritis. (Akanno Decl. ¶ 12.) Accordingly, there is simply no evidence that Defendant Dr. Akanno was deliberately indifferent to Plaintiff's medical needs by ordering x-rays. In fact, the ordering of x-rays was done to ensure proper treatment and to further evaluate Plaintiff's complaints.

///

### 4. Lower Bunk Chrono and Trileptal Prescription

Even if the Court considered Plaintiff's claim regarding the denial of a lower bunk chrono and Trileptal prescription, Plaintiff has failed to demonstrate deliberate indifference to a serious medical need.

Dr. Akanno's notes from the July 6, 2015, examination do not reflect any mention of a lower bunk chrono or prescription for Trileptal. (Compare Pl. Dep. at 47:22 with Akanno Decl. Ex. 2 and Ex. 5.) However, a later note dated September 2, 2015, references both of these issues. (Akanno Decl. ¶¶ 13, 14, Ex. 5.) Dr. Akanno declares and it is undisputed that:

> Lower bund chronos are issued by physicians when an inmate suffers from some physical condition that satisfies criteria set by either Department or institutional policy. A lower bunk chrono entitles the inmate to the lower bunk in the cell to which he is assigned. Some of the criteria that support a lower bunk chrono include: seizure disorder; neurological conditions such as dizziness; morbid obesity; acute recovery from spinal or orthopedic surgery on extremities; orthostatic hypotension (sudden loss of blood pressure caused by sudden change in position); chronic lower extremity edema (swelling); chronic venous stasis wounds (chronic loss of circulation in the legs that can lead to swelling, skin changes and ulcers); or insufficient strength or motion to climb up to or down from an upper bunk. Inmate-patients request lower bunk chronos frequently and the criteria are strictly applied. Physicians use their medical training and experience to determine if a patient meets the established criteria for a lower bunk chrono.

(Akanno Decl. ¶ 6.) On September 2, 2015, Dr. Akanno examined and assessed Plaintiff for a lower bunk chrono and in his medical opinion, Plaintiff did not qualify for a lower bunk chrono. (Akanno Decl. ¶¶ 13, 14.) Plaintiff has not and cannot demonstrate that he is qualified to receive a lower bunk chrono. Plaintiff is not recovering from acute orthopedic surgery, spine surgery, and does not suffer from seizures. Nor has he demonstrated morbid obesity or orthostatic hypotension. Accordingly, the record supports the finding that Plaintiff was not qualified to receive a lower bunk based on Dr. Akanno's assessments on both July 6, 2015 and September 2, 2015. Indeed, Plaintiff acknowledged at his deposition that he can jog one lap every two weeks and he has a prison job of pushing others who are wheelchair bound to the medical unit. (Pl. Dep. at 94:4-7, 94:25-95:5.)

To the extent Plaintiff takes issue with Dr. Akanno's prescription of Trileptal to treat his pain, such claim does not evidence deliberate indifference. It is undisputed that oxcarbazepine (Trileptal) is a medication that can help some patients who suffer from chronic nerve pain when used in conjunction

with NSAID's. (Akanno Decl. ¶ 14.) Plaintiff's mere disagreement with the prescribed pain medication does not support a finding of deliberate indifference.

Plaintiff's claim that Dr. Akanno "incorrectly" believed that Plaintiff's injury did not pose a risk of serious harm, also does not evidence deliberate indifference. Indeed, if Dr. Akanno believed that there was no risk of serious harm, then there can be deliberate indifference. See Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (plaintiff must show the course of treatment chosen by defendant was "medically unacceptable under the circumstances" and chosen in conscious disregard to an excessive risk to the plaintiff's health). Plaintiff contends that Dr. Akanno's review of the prior x-rays that revealed the presence of chronic conditions is "evidence that Defendant Akanno knew Plaintiff's condition was serious." (Pl. Opp'n at 5.) However, Plaintiff has offered no admissible evidence that Dr. Akanno's course of treatment – NSAIDs, x-rays, and exercise – was medically inappropriate under the circumstances. Dr. Akanno diagnosed Plaintiff's chronic conditions as arthritis and degenerative disc disease. However, these conditions do not support the need for opioid-based pain killers, and the standard of care for treatments calls for the use of NSAIDs. Accordingly, Dr. Akanno is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

## IV.

## CONCLUSION AND RECOMMENDATION

As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have considered other classes or types of pain medication on July 6, 2015, and that Defendant's failure to do so was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. Although Plaintiff may disagree on the extent of his pain, that dispute does not create a triable issue of fact in the face of Defendant's uncontroverted evidence that in his opinion, continuing Plaintiff's 600mg Ibuprofen prescription and ordering further x-rays was a medically appropriate response to Plaintiff's complaints of pain and that prescribing a different, stronger medication was not indicated.

///
///
///

In sum, the record demonstrates that Plaintiff's complaints regarding his medical condition were thoroughly and appropriately addressed by Defendant Dr. Akanno. Plaintiff's mere disagreement with the course of treatment chosen by Defendant does not support a claim under the Eighth Amendment, and Defendant is entitled to summary judgment.[7] Snow, 681 F.3d 987-88.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Akanno's motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendant Akanno.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __August 15, 2018__

UNITED STATES MAGISTRATE JUDGE

---

[7] Because Defendant Dr. Akanno is entitled to summary judgment, the Court need not and does not reach the issue of qualified immunity.