## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RATCLIFF,<br><br>Plaintiff,<br><br>v.<br><br>J. AKANNO, et al.,<br><br>Defendants. | Case No.: 1:16-cv-00584-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS MANASRAH, OGUN, RANGEL AND SPAETH'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 54] |

Plaintiff William Ratcliff is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants Manasrah, Ogun, Rangel and Spaeth's motion for summary judgment, filed March 29, 2018.

## I.

## PROCEDURAL HISTORY

This action is proceeding against Defendants J. Akanno, M. Spaeth, Ogun Omolade, A. Rangel, and A. Manasrah for deliberate indifference to Plaintiff's health and safety in violation of the Eighth Amendment.[1]

On May 17, 2017, Defendants Manasrah, Rangel and Spaeth filed an answer to the complaint. (ECF No. 25.)

On May 18, 2017, the Court issued the discovery and scheduling order. (ECF No. 26.)

---

[1] Defendant Akanno is represented by Nicole Cahill, and Defendants Spaeth, Ogun Omolade, A. Rangel, and A. Manasrah are represented by Deputy Attorney General Catherine Woodbridge.

1

| | |
|---|---|
| 1 | On June 8, 2017, Defendant Omolade filed an answer to the complaint. (ECF No. 28.) On |
| 2 | June 9, 2017, the Court extended the discovery and scheduling order to Defendant Omolade. (ECF |
| 3 | No. 29.) |
| 4 | On September 6, 2017, Defendant Akanno filed an answer to the complaint. (ECF No. 44.) |
| 5 | On September 7, 2017, the Court extended the discovery and scheduling order to Defendant Akanno. |
| 6 | (ECF No. 45.) |
| 7 | On March 28, 2018, Defendant Akanno filed a motion for summary judgment.[2] (ECF No. 53.) |
| 8 | As previously stated, on March 29, 2018, Defendants Manasrah, Omolade, Rangel and Spaeth |
| 9 | filed a motion for summary judgment. (ECF No. 54.) |
| 10 | After receiving three extensions of time, Plaintiff filed oppositions to both of Defendants' |
| 11 | motions for summary judgment on June 21, 2018, respectively. (ECF Nos. 66, 67.) |
| 12 | Defendant Akanno filed a reply and objections on June 28, 2018. (ECF Nos. 70, 71.) |
| 13 | Defendants Manasrah, Omolade, Rangel and Spaeth filed a reply and objections on June 26, |
| 14 | 2018. (ECF Nos. 68, 69.) |
| 15 | Therefore, Defendant Akanno's motion for summary judgment is deemed submitted for |
| 16 | review, without oral argument. Local Rule 230(l). |

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).

---

[2] This motion is addressed by separate Findings and Recommendations.

The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

In April 2010, Plaintiff suffered from severe ulnar neuropathy at the wrist, soft tissue inflammation, tendon swelling with inflammation, unusual weakness and numbness. Plaintiff was under treatment by prison health staff for this serious medical condition, and Plaintiff was informed by Physician Dennis G. Patterson that he would need surgery. Plaintiff was issued a lower bunk chrono by Dennis G. Patterson.

On December 8, 2012, while housed at Calipatria State Prison, Plaintiff sustained trauma during an assault and was air lifted to Desert Regional Medical Center. Plaintiff suffered multiple contusions and fractures to his lower back and left shoulder.

On November 23, 2013, Plaintiff was transferred to Kern Valley State Prison (KVSP). While housed at KVSP, Defendant Ogun Omolade took Plaintiff's lower bunk chrono without Plaintiff's knowledge and without contacting Plaintiff to explain why the chrono was no longer necessary.

Defendant Omolade, as a medical examiner, has access to the computer medical file to determine any medication taken by Plaintiff. Had Omolade checked the medical file, he would have discovered the extent of Plaintiff's injuries.

On May 22, 2015, Plaintiff slipped and fell off the desk stool while trying to climb onto the upper bunk and sustained an injury to back of his head which required stitches. Plaintiff re-injured his

lower back and upper left shoulder. On this same date, Plaintiff completed a health care service request form and complained to Defendant Rangel about the injury to Plaintiff's shoulder and back. Plaintiff was experiencing excruciating and agonizing pain. Defendant Rangel stated that these injuries normally go away after several months and suggested that Plaintiff exercise and try not to bend too much.

Defendant Rangel delayed diagnosis and delayed Plaintiff from getting treatment for his lower back and shoulder while Plaintiff was suffering in pain. Defendant Rangel ignored Plaintiff for several weeks before sending him to see a specially trained doctor. Defendant Rangel was aware of Plaintiff's suffering and need for treatment from review of his medical requests. At this time, Plaintiff did not know that he had re-fractured his back and shoulder and that arthritis had set in.

On May 28, 2015, Plaintiff's condition had worsened. Plaintiff was seen the next day, May 29, 2015, by Defendant A. Manasrah. Plaintiff told Manasrah about the assault and the injuries he suffered. Plaintiff requested pain medication and a temporary lower bunk chrono because it was difficult getting to and from the upper bunk. Plaintiff was told that an x-ray was needed before pain medication could be prescribed and a lower bunk chrono was out of the question at that time. Plaintiff contends his x-rays revealed two vertebral fractures and arthritis.

On July 6, 2015, Plaintiff explained to Defendant Akanno about his condition and injuries. Dr. Akanno suggested that Plaintiff continue with the exercise treatment which he knew was ineffective or caused substantial risk of harm.

On July 29, 2015, Plaintiff filed another administrative appeal. The appeal was assigned to Defendant Spaeth and with knowledge of Plaintiff's medical condition denied the appeal for medical treatment.

**B.     Statement of Undisputed Facts**

1.     At all times relevant, Defendants Manasrah, Spaeth, Ogun and Rangel were employed by California Department of Corrections and Rehabilitation working at Kern Valley State Prison. (Declaration of Ameen Manasrah ["Manasrah Decl."] ¶ 2, Ex. A; Declaration of Marta Spaeth ["Spaeth Decl."] ¶ 2, Ex. B; Declaration of Omolade Ogun ["Ogun Decl."] ¶ 2, Ex. C; Declaration of Amy Rangel ["Rangel Decl."] ¶ 2, Ex. D.)

1  2. Plaintiff has been incarcerated at Kern Valley State Prison since November 23, 2013.
(Deposition of William Ratcliff ["Pl. Dep."] taken January 5, 2018 at 60:13-16, Ex. E.)

3. Dr. Spaeth and Dr. Ogun are medical doctors in good standing with the California Medical Board. (Spaeth Decl. ¶ 2, Ex. B; Ogun Decl. ¶ 2, Ex. C.)

4. Defendant Manasrah is a Nurse Practioner (NP) in good standing with the California Nursing Board. (Manasrah Decl. ¶ 2, Ex. A.)

5. Defendant Rangel is a Registered Nurse (RN) in good standing with the California Nursing Board. (Rangel Decl. ¶ 2, Ex. D.)

6. Plaintiff has no medical training. (Pl. Dep. at 60:11-12.)

7. A low bunk chrono can be either temporary or permanent. (Spaeth Decl. ¶ 5, Ex. B; Ogun Decl. ¶ 4, Ex. C.)

8. A permanent low bunk chrono is valid for one year.[3] (Spaeth Decl. ¶ 5, Ex. B; Ogun Decl. ¶ 4, Ex. C.)

9. After one year, there must be another evaluation to determine if the chrono is medically necessary. (Spaeth Decl. ¶ 5, Ex. B; Ogun Decl. ¶ 4, Ex. C.)

10. It is custom and practice of each prison facility to evaluate transfer inmate patients for medical conditions. (Spaeth Decl. ¶ 5, Ex. B.)

11. Whether a low bunk chrono was issued at a different prison facility would still be subject to review at Kern Valley State Prison for determination of medical need. (Spaeth Decl. ¶ 5, Ex. B.)

12. It is within the physician or physician assistant's medical discretion to determine whether a low bunk chrono is warranted for an inmate patient. (Spaeth Decl. ¶ 5, Ex. B.)

13. Plaintiff was issued a low bunk chrono while at Calipatria State Prison. (Ogun Decl. ¶ 4, Ex. C; Declaration of Bennett Feinberg ["Feinberg Decl."] ¶ 12, Ex. F.)

---

[3] Plaintiff attempts to dispute this fact by stating that a permanent low bunk chrono is permanent due to an inmate's serious medical condition and cites exhibit 4 attached to his opposition. (Pl. Opp'n at 12.) Exhibit 4 attached to Plaintiff's opposition is a copy of Plaintiff's permanent low bunk chrono, which clearly states "[c]hronos indicating permanent accommodations shall be reviewed annually." (Pl. Opp'n, Ex. 4.) Because of the annual review, it is clear that a permanent medical chrono is valid for one year to be continued or rescinded based on subsequent annual review.

5

14. According to his medical records, he received a permanent low bunk chrono on January 9, 2012, valid for one year. (Ogun Decl. ¶ 4, Ex. C.)

15. While at Calipatria State Prison, Plaintiff was reevaluated for low bunk chrono and was issued a temporary low bunk chrono with an expiration date of April 30, 2014. (Ogun Decl. ¶ 4, Ex. C; Feinberg Decl. ¶ 12, Ex. F.)

16. Plaintiff transferred to Kern Valley State Prison on November 23, 2013, and was subject to reevaluation for chronos. (Spaeth Decl. ¶ 5, Ex. B.)

17. Plaintiff does not know the requirements for a low bunk chrono at Kern Valley State Prison. (Pl. Dep. at 86:24-87:2.)

18. Plaintiff is seen by Dr. Stepke on January 9, 2012 for a Primary Care Provided (PCP) follow-up of his chronic conditions. (Feinberg Decl. ¶ 7, Ex. F.)

19. At that visit, his carpal tunnel syndrome (CTS) and ulnar neuropathy are noted to be well controlled with prescription medication. (Feinberg Decl. ¶ 7, Ex. F.)

20. On exam, tests for carpal tunnel syndrome are both negative and Plaintiff has normal handgrip strength as well as no sensory deficits. (Feinberg Decl. ¶ 7, Ex. F.)

21. On December 8, 2012 a Physician on Call Note documents Plaintiff was involved in a riot on the yard and suffered multiple head and body contusions. (Feinberg Decl. ¶ 8, Ex. F.)

22. He was sent by air ambulance to Desert Regional Medical Center (DRMC). (Feinberg Decl. ¶ 8, Ex. F.)

23. His exam was notable for tenderness over the lumbar spine and diagnostic studies were notable for x-rays showing fractures of the transverse processes of the L2, L3, and L4 lumbar vertebral bodies bilaterally, alcohol in his bloodstream, and methamphetamine in his urine drug screen. (Feinberg Decl. ¶ 8, Ex. F.)

24. Plaintiff was diagnosed with closed head injury status post assault, acute lumbar pain with L2-L4 transverse processes fractures and methamphetamine abuse, and was sent home with patient education for each condition. (Feinberg Decl. ¶ 8, Ex. F.)

25. With respect to the lumbar spine fractures, the emergency room physician typed in

additional information for the Plaintiff in all caps as follows: "YOU HAVE LUMBAR SPINE TRANSVERSE PROCESS FRACTURES OF LUMBAR 2-4 LEVELS. THIS IS ONLY PAINFUL AND CAUSES MUSCLE SPASM BUT IS NOT DANGEROUS." (Feinberg Decl. ¶ 9, Ex. F.)

26. On December 10, 2012, Plaintiff was seen by Dr. Colombini, examined, and pain medication is ordered. (Feinberg Decl. ¶ 9, Ex. F.)

27. At Plaintiff's December 21, 2012 follow-up appointment with Dr. Colombini, Plaintiff is noted to be doing well, walking about with ease, and "he wants to know if it is okay to do pushups and burpees," but is advised not to do so at that time. (Feinberg Decl. ¶ 10, Ex. F.)

28. On January 15, 2013, Plaintiff is seen in neurosurgical consultation by Dr. Yoo for his history of lumbar transverse process fractures 5 weeks prior. (Feinberg Decl. ¶ 11, Ex. F.)

29. On exam, Plaintiff was noted to walk into the examination office of his own free will and able to move his lower extremities with good range of motion and good strength. (Feinberg Decl. ¶ 11, Ex. F.)

30. Dr. Yoo reports that Plaintiff is following along the expected course of recovery, whereupon his back pain is getting better slowly with time, and he will continue to do so and will make full recovery. (Feinberg Decl. ¶ 11, Ex. F.)

31. By April 30, 2012 when Plaintiff is seen for a PCP follow-up with Dr. Kornbluth, he reports his back pain is better with "occasional twinges of pain for a few seconds every 2 weeks. Still numbness left gluteal area." (Feinberg Decl. ¶ 12, Ex. F.)

32. Plaintiff's main pain complaint is now in the left shoulder, though he is performing 400 push ups a day despite an x-ray from January 24, 2013, showing left shoulder arthritis of the glenohumeral joint space.[4] (Feinberg Decl. ¶ 12, Ex. F.)

33. Physical therapy is recommended and Dr. Kornbluth updates Plaintiff's 7410 chrono indicating the temporary assignment of a bottom bunk through April 30, 2014. (Feinberg Decl. ¶ 12, Ex. F.)

---

[4] Plaintiff attempts to dispute this fact by stating that he also complained of back pain. While it is true that back pain was assessed, a reasonable interpretation of the medical evaluation supports the statement of fact that Plaintiff's *main* complaint was shoulder pain. (Pl. Opp'n, Ex. 8.)

34. On May 28, 2013, Plaintiff reports to Dr. Kornbluth that he is no longer numb in the left gluteal area and his low back pain "feels better, pain less 'it's healing.'" (Feinberg Decl. ¶ 13, Ex. F.)

35. By July 23, 2013, Plaintiff refuses treatment for his left shoulder with a notation in his own handwriting on the refusal form "don't need it, arm is fine." (Feinberg Decl. ¶ 14, Ex. F.)

36. On September 10, 2013, Dr. Kornbluth notes that Plaintiff has "full return of motion after fractures L2, 3, 4 vertebrae transverse processes 12/8/12." (Feinberg Decl. ¶ 15, Ex. F.)

37. On January 7, 2014, Dr. Ogun saw Plaintiff for follow up glaucoma and Hepatitis C. (Ogun Decl. ¶ 3, Ex. C; Feinberg Decl. ¶ 17, Ex. F.)

38. Based on Plaintiff's history and examination findings, his wrist brace and lower bunk accommodations were discontinued because Plaintiff had no symptoms or objective physical findings that would warrant or necessitate a low bunk chrono. (Ogun Decl. ¶ 3, Ex. C; Feinberg Decl. ¶ 17, Ex. F.)

39. Over the ensuing year, Plaintiff is seen for PCP visits on January 17, 2014, February 25, 2014, March 7, 2014, (refuses a visit on July 11, 2014), September 2, 2014, and December 15, 2014. (Feinberg Decl. ¶ 18, Ex. F.)

40. At most of these visits, Plaintiff is noted as having "no medical complaints." (Feinberg Decl. ¶ 18, Ex. F.)

41. At none of these visits does Plaintiff complaint of any back pain, wrist pain or shoulder pain. (Feinberg Decl. ¶ 18, Ex. F.)

42. Nor does Plaintiff submit any Health Care Services Request Forms (7362) with any such concerns during this time. (Feinberg Decl. ¶ 18, Ex. F.)

43. On September 2, 2014 and December 15, 2014, NP Manasrah saw Plaintiff as a patient. (Manasrah Decl. at ¶¶ 4-5, Ex. A.)

44. Plaintiff has no issues and no medical complaints and his gait and grip strength were normal. (Manasrah Decl. at ¶¶ 4-5, Ex. A; Feinberg Decl. ¶ 18, Ex. F.)

45. On January 15, 2015, NP Manasrah saw Plaintiff for inmate appeal requesting low bunk chrono and for history of wrist and ulnar pain. (Manasrah Decl. at ¶ 6, Ex. A; Feinberg Decl. ¶ 19, Ex. F.)

46. He was in no acute distress as evidenced by his vital signs and on examination, there was no medical indication for low bunk chrono because Plaintiff had normal gait and hand grip strength was 5/5 which is normal. (Manasrah Decl. at ¶ 6, Ex. A; Feinberg Decl. ¶ 19, Ex. F.)

47. Plaintiff makes no further requests for many months, not at this next PCP appointment on April 3, 2015 where he has no medical concerns, nor on several 7362's submitted through early May 2015 requesting assistance with such things as allergies and eyeglasses.[5] (Feinberg Decl. ¶ 20, Ex. F.)

48. On May 22, 2015, Plaintiff is seen in clinic by RN Rangel and reports "I was standing down on a stool and doing my bed and fell back. I am okay now." (Feinberg Decl. ¶ 21, Ex. F.)

49. Plaintiff further reported he had "no pain, but I can feel the cut in the back of my head." (Feinberg Decl. ¶ 21, Ex. F.)

50. On May 22, 2015, Plaintiff was seen by NP Manasrah, who gave orders to transport Plaintiff to the Triage and Treatment Area (TTA) for a laceration to the back of the scalp with scant bleeding. (Feinberg Decl. ¶ 21, Ex. F.)

51. In the TTA, Plaintiff is seen by Dr. Akanno who sutures the scalp laceration, provides the NSAID Ibuprofen for pain, the antibiotic Keflex to prevent infection, daily dressing changes, and physician follow-up in 5-7 days. (Feinberg Decl. ¶ 21, Ex. F.)

52. On May 23, 2015, Plaintiff submits a health care request (7362) regarding injury to his left arm, but there is no mention of pain or injury to low back pain. (Feinberg Decl. ¶ 22, Ex. F.)

53. On May 26, 2015, Plaintiff appeared in the clinic where RN Rangel was working. (Feinberg Decl. ¶ 21, Ex. F; Rangel Decl. ¶ 4, Ex. D.)

---

[5] The fact that Plaintiff made subsequent requests for medical attention after May 2015, does not place this statement of fact in dispute.

54. RN Rangel evaluated Plaintiff in response to a complaint of injury to his left arm. (Feinberg Decl. ¶ 22, Ex. F; Rangel Decl. ¶, Ex. D.)

55. Based on RN Rangel's encounter and assessment of Plaintiff, there was no objective findings to support an urgent need for medical care.[6] (Feinberg Decl. ¶ 22, Ex. F; Rangel Decl. ¶, Ex. D.)

56. On May 28, 2015, Plaintiff is seen by Dr. Akanno and the scalp would is noted to be healing and the sutures are removed and Plaintiff "denies any complaints at this time." (Feinberg Decl. ¶ 23, Ex. F.)

57. On May 29, 2015, Plaintiff submits health care request (7362) regarding his left shoulder and admits that he was seen by the RN on May 26, and 27. (Feinberg Decl. ¶ 24, Ex. F.)

58. Plaintiff was seen by RN German on June 1, 2014, and RN German noted in the medical record that "inmate states he just wanted to come in and see who to write up." Advised inmate if he still has symptoms he can be seen by RN today, however inmate was upset because he hasn't been seen by PCP and has walked out. Advised to resubmit 7362 if symptoms persist." (Feinberg Decl. ¶ 23, Ex. F.)

59. There is no mention of low back pain. (Feinberg Decl. ¶ 24, Ex. F.)

60. On July 6, 2015 Plaintiff is seen by Dr. Akanno for a 602 appeal "requesting for M.D. evaluation of the seriousness of his injuries at the back of his scalp, left shoulder and lower back following a fall." (Feinberg Decl. ¶ 25, Ex. F.)

61. Plaintiff makes no request for a lower bunk chrono or stronger pain medication. (Feinberg Decl. ¶ 25, Ex. F.)

62. Plaintiff was seen and examined, noted to not be in any distress, scalp wound site completely healed, left shoulder exam had minimally reduced range of motion otherwise normal, and the lower back was nontender without muscle spasms, atrophy or signs of sciatica on exam. (Feinberg Decl. ¶ 25, Ex. F.)

---

[6] Plaintiff may not dispute this fact by offering his lay opinion to negate the medical determination by RN Rangel. Fed. R. Evid. 701, 70

63. Dr. Akanno ordered Ibuprofen for pain, x-rays of the left shoulder and lumbar spine, and an appointment within 21 days to review the x-ray results. (Feinberg Decl. ¶ 25, Ex. F.)

64. On July 19, 2015, x-rays of the left shoulder showed glenohumeral joint arthritis previously seen on the January 24, 2013 films while the x-rays of the lumbar spine similarly showed Plaintiff's December 8, 2012 "old right sided transverse process fractures of L2, L3, and L4. … No acute fracture." (Feinberg Decl. ¶ 26, Ex. F.)

65. Plaintiff signed a refusal to be seen on July 20, 2015 in order to go over these x-ray results. (Feinberg Decl. ¶ 27, Ex. F.)

66. On August 6, 2015, x-ray results are discussed with Plaintiff who has "no acute symptoms." (Feinberg Decl. ¶ 27, Ex. F.)

67. Plaintiff makes no request for a lower bunk chrono or a change in medications. (Feinberg Decl. ¶ 27, Ex. F.)

68. September 2, 2015 Plaintiff is seen by Physician Assistant Obguehi for 602 appeal KVSP HC 15036436. (Feinberg Decl. ¶ 28, Ex. F; Spaeth Decl. ¶ 4, Ex. B.)

69. Plaintiff requests medication for arthritis, lower bunk chrono reinstated, and compensation for malpractice. (Feinberg Decl. ¶ 28, Ex. F; Spaeth Decl. ¶ 4, Ex. B.)

70. On exam, Plaintiff is noted to be muscular with normal musculoskeletal and neurologic exams. (Feinberg Decl. ¶ 28, Ex. F; Spaeth Decl. ¶ 4, Ex. B.)

71. He is denied a lower bunk chrono "since there is no recent surgery or severe osteoarthritis or disability affecting bilateral lower extremities or severe upper extremity." (Feinberg Decl. ¶ 28, Ex. F; Spaeth Decl. ¶ 4, Ex. B.)

72. Plaintiff is prescribed the medications naproxen as well as oxcarbazepine for pain, and provided general information as to how to pursue a malpractice claim and 60-90 day follow-up is requested. (Feinberg Decl. ¶ 28, Ex. F.)

73. Dr. Spaeth is the Chief Physician and Surgeon at Kern Valley State Prison. (Spaeth Decl. ¶ 2, Ex. B.)

74. As Chief Physician and Surgeon, Dr. Spaeth is the direct supervisor of physicians, physician assistants, and nurse practitioners. (Spaeth Decl. ¶ 3, Ex. B.)

75. Dr. Spaeth did not see Plaintiff as a patient. (Spaeth Decl. ¶ 3, Ex. B.)

76. Dr. Spaeth's involvement with Plaintiff is limited to review of Plaintiff's inmate appeal KVSP HC 15036436. (Spaeth Decl. ¶ 3, Ex. B; Pl. Dep. at 66:22-67:23.)

77. Dr. Spaeth was the direct supervisor of PA Obguehi, reviewed PA Obguehi's response to Plaintiff's first level KVSP HC 15306436 for completeness and accuracy, and reviewed the medical record to make sure that the information in the appeal response is correct. (Spaeth Decl. ¶ 4, Ex. B.)

78. The medical record substantiated PA Obguehi's findings and there was no medical evidence to substantiate the request for a low bunk chrono and Plaintiff's physical findings and examinations did not support his request for a low bunk chrono. (Spaeth Decl. ¶ 4, Ex. B; Feinberg Decl. ¶ 28, Ex. F.)

79. Dr. Spaeth was not involved in any other aspect of Plaintiff's appeal KVSP HC 15036436. (Spaeth Decl. ¶ 4, Ex. B.)

80. Karen Brown responded to the appeal at the second level. (Spaeth Decl. ¶ 4, Ex. B.)

81. Examinations on September 22, 2015, September 28, 2015, December 28, 2015, and January 5, 2016, are unremarkable. (Feinberg Decl. ¶¶ 29-33, Ex. F.)

82. There are no visible deformities on exam, Plaintiff has a normal gait, and no evidence muscle, atrophy, hypertrophy, weakness or tremors. (Feinberg Decl. ¶¶ 30-32, Ex. F.)

83. During exam on January 5, 2016, it is noted that Plaintiff "reaches overhead, took off his shirt for shoulders examination without effort or assistance." (Feinberg Decl. ¶ 32, Ex. F.)

84. During more recent examinations, Plaintiff admits that he does "a lot of pushups and pulling." (Feinberg Decl. ¶ 33, Ex. F.)

85. Dr. Ogun was not involved in nor asked to consult in Plaintiff's medical care after January 17, 2014. (Ogun Decl. ¶ 6, Ex. C.)

86. NP Manasrah did not see Plaintiff as a patient on January 10, 2016, nor was he asked to see Plaintiff on that date. (Manasrah Decl. ¶ 8, Ex. A.)

87. NP Manasrah was not advised of any injuries or conditions that required medical care on that date. (Manasrah Decl. ¶ 8, Ex. A.)

88. There is no medical evidence that a low bunk chrono was medically necessary for Plaintiff at anytime during his stay at KVSP. (Feinberg Decl. ¶ 15, Ex. F.)

**C.     Defendants' Objections to Declarations of Plaintiff and Fellow Inmates**

In support of his opposition, Plaintiff submits his declaration along with the declarations of inmates Donald E. Parks, Gerry Williams, and Quinn Cross. Defendants object to the declarations to the extent certain portions contain expert witness opinion for which these individuals are not qualified to provide. Defendants' objections are sustained.

With regard to the declaration of Donald E. Parks, Defendants object to the opinion that Plaintiff "reinjured his back and shoulder while we were cellmates." (Declaration of Donald E. Parks at 1:12-13.)

With regard to the declaration of Gerry Williams, Defendants object to the opinion that Plaintiff "reinjured his back and shoulder on May 22, 2015, when he slipped and fell off the desk stool." (Declaration of Gerry Williams at ¶ 1.)

With regard to the declaration of Quinn Cross, Defendants object to the opinion that Plaintiff "broke his back." (Declaration of Quinn Cross at 2:2-3.)

With regard to the declaration of Plaintiff, Defendants object to his opinion "[a]s of today, I declare under the penalty of perjury and under the Constitution, and laws of the United States. I suffer chronic back pain, I suffer pain underneath my feet due to arthritis, and I suffer severe ulnar neuropathy at the wrist."   (Declaration of Plaintiff at 1:23-27.) While Plaintiff can provide testimony as to the pain he suffers, he cannot provide a medical diagnosis of his problems. Nor can Plaintiff rely on outdated medical examinations to opine about his present medical conditions.

An opinion regarding any aspect of Plaintiff's medical condition and/or care is beyond that of a lay witness and requires opinion by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Therefore, the opinions set forth above are improper and Defendants' objections are sustained.

**D.     Analysis and Findings on Defendants' Motion**

Defendants argue there is no admissible evidence to support Plaintiff's claims of deliberate indifference to medical needs against them. Plaintiff's claim is based on the denial of a low bunk

chrono; however, the medical evidence establishes that Plaintiff's medical condition did not support a low bunk chrono. To the extent Plaintiff claims that he failed to receive medical care for alleged injuries and complaints, the medical record refutes his claims and summary judgment is proper.

Plaintiff argues that each of the Defendants ignored and failed to treat his serious medical condition and improperly rescinded and failed to provide a low bunk chrono causing further injury to him.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d at 987, overruled in part on other grounds, Peralta v. Dillard, 744 F.3d at 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

///

1. Defendant Dr. Ogun

Plaintiff contends that Dr. Ogun was deliberately indifferent on January 7, 2014, by denying a request for a low bunk chrono.

It is undisputed that on January 7, 2014, Dr. Ogun saw Plaintiff for follow up glaucoma and Hepatitis C. (Ogun Decl. ¶ 3, Ex. C; Feinberg Decl. ¶ 17, Ex. F.) Based on Plaintiff's history and examination findings, his wrist brace and lower bunk accommodations were discontinued because Plaintiff had no symptoms or objective physical findings that would warrant or necessitate a low bunk chrono. (Ogun Decl. ¶ 3, Ex. C; Feinberg Decl. ¶ 17, Ex. F.)

In his opposition, Plaintiff contends he was diagnosed by Dr. Patterson as having "ulnar neuropathy at the wrist with soft tissue inflammation and tendon swelling." (Pl. Opp'n at 9, Ex. 3.) The medical report by Dr. Patterson is dated July 31, 2009. (Pl. Opp'n, Ex. 3.) Plaintiff received a low bunk accommodation chrono for his nerve damage. (Id., Ex. 4.) However, on January 7, 2014, Dr. Ogun took the lower bunk chrono without Plaintiff's knowledge and failed to contact or explain why it was no longer necessary. (Pl. Opp'n at 10.) Plaintiff contends that as a result, on May 22, 2015, Plaintiff slipped and fell off the desk stool while trying to climb onto the upper bunk. (Id.)

Dr. Ogun declares the following:

> On January 7, 2014, [Plaintiff] presented to me for follow up glaucoma and Hepatitis C. He was in no acute distress, as noted by his vital signs and examination findings. [Plaintiff] reported a history of glaucoma and requested for refill of medication for his eyes. He reported eye pain and blurry vision. He denied double vision. His eye examination was within normal limit. He was referred to Ophthalmology. His glaucoma medication was refilled. [Plaintiff] also has a history of exposure to Hepatitis C. Labs ordered September 20, 2013 were positive for antibody. He denies abdominal pain, fatigue or change in color of eyes. His vaccination was reviewed and it indicated need for Hepatitis A and B vaccines. Hepatitis A and B vaccines were ordered. His viral load was ordered to further evaluate his History of exposure to Hepatitis C virus. [Plaintiff] also reported that he was given a wrist brace previously, but he stated he did not have need for his wrist brace. He denies any pain, swelling or numbness or limitation of range of motion. His musculoskeletal examination was normal with no tenderness or swelling or limitation in range of motion. Based on the patient's history and my examination findings, his wrist brace and lower bunk accommodation were discontinued and I updated his comprehensive accommodation chrono.
>
> Historically, [Plaintiff] had been issued low bunk chrono while at Calipatria State Prison. According to his medical records, he received a permanent low bunk chrono on January 9, 2012. A permanent low bunk chrono is valid for one year. After one year, there must be

15

another evaluation to determine if the chrono is medically necessary. On June 4, 2013 while at Calipatria State Prison, [Plaintiff] was issued a temporary low bunk chrono. His lower bunk accommodation had an expiration date of April 30, 2014. When I saw [Plaintiff] on January 7, 2014, he had no symptoms or objective physical findings that would warrant or necessitate a low bunk chrono. Hence, I updated his Comprehensive accommodation indicating no need for brace and lower bunk accommodation.

(Ogun Decl. ¶¶ 3-4.) Defendants further present expert testimony by Dr. Bennett Feinberg who opined as follows:

> By the time Plaintiff is seen by Dr. Ogun on January 7, 2014, the low back pain and shoulder pain for which Dr. Kornbluth issued a temporary low bunk chrono had long since been documented as resolved on September 10, 2013. Nor does Plaintiff have any complaints of low back or shoulder pain at this visit. Moreover, the wrist pain for which Dr. Stepke had issued a low bunk chrono in 2012, superseded by more recently written chronos, was reported by Plaintiff to Dr. Ogun as having resolved at their January 7, 2014 visit. Plaintiff specifically denied any pain, swelling or limitations of movement of the wrist nor any need for his previously written wrist brace which he no longer used. Plaintiff had no serious medical needs at this visit. As predicted by the emergency room physician on December 8, 2012 and the neurosurgeon on January 15, 2013, Plaintiff's transverse spinous process fractures were not serious and had followed the expected course of full recovery. Plaintiff's left shoulder arthritis, which did not interfere with his ability to perform hundreds of pushups a day, had not bothered him for many months. Nor was Plaintiff complaining of any problems with his wrists.

(Feinberg Decl. ¶ 34(a).)

It is undisputed that it is the custom of CDCR to review any and all medical accommodations upon transfer to a new prison facility. (Spaeth Decl. ¶ 5.) Thus, regardless of whether a medical chrono was issued at a different prison facility, it would still be subject to review upon transfer to KVSP for determination of medical need. (Id.) It is further undisputed that Plaintiff does not know the requirements for a low bunk chrono at KVSP. (Pl. Dep. at 86:24-87:2.) Plaintiff has provided no medical opinion demonstrating that his medical condition required a low bunk chrono on January 7, 2014. Plaintiff's own declaration, and that of inmates Donald E. Parks, Gerry Williams, and Quinn Cross cannot rebut the declarations of Doctors Ogun and Feinberg because they are laypersons who are not qualified to offer medical opinions. Without evidence, Plaintiff's belief that his condition required a low bunk chrono is simply a difference of opinion with medical treatment, which does not give rise to an Eighth Amendment violation. Moreover, the fact that a different doctor at a different institution provided a temporary low bunk chrono does not evidence deliberate indifference by Doctor

Ogun because a mere difference of opinion among medical professionals does not rise to a constitutional violation. Snow v. McDaniel, 681 F.3d at 987; Wilhelm v. Rotman, 680 F.3d at 1122; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Accordingly, Defendant Ogun is entitled to summary judgment.

2. Defendant Nurse Rangel

Plaintiff contends that on May 22, 2015, he slipped and fell injuring his head and requiring stitches. Plaintiff also injured his low back and shoulder. Plaintiff claims he complained to Nurse Rangel who advised him to exercise and try not to bend. Plaintiff contends that Rangel delayed treatment and ignored his complaints for several weeks. Plaintiff also argues that Rangel was deliberately indifferent on May 26, 2015, when she refused to allow Plaintiff to see a doctor.

Although Plaintiff contends that Nurse Rangel delayed treatment on May 22, 2015, it is undisputed that on May 22, 2015, Plaintiff was examined by Nurse Practitioner Manasrah. (Feinberg Decl. ¶ 34(c), Ex. 2.) Manasrah immediately gave orders to have Plaintiff transported to the TTA for suturing. (Feinberg Decl. ¶ 34(c), Ex. 2.) It is further undisputed that on this same date, May 22, 2015, Plaintiff was seen by Dr. Akanno and his head wound was sutured. (Manasrah Decl. ¶ 7; Feinberg Decl. ¶ 34c, Ex. 2.) Other than Plaintiff's conclusory allegations, there is no evidence that Nurse Rangel delayed treatment causing further injury to Plaintiff.

It is further undisputed that on May 26, 2015, Plaintiff appeared in the clinic where Rangel was working. (Feinberg Decl. ¶ 21, Ex. F; Rangel Decl. ¶ 4, Ex. D.) Rangel evaluated Plaintiff in response to his complaint of injury to his left arm. (Feinberg Decl. ¶ 22, Ex. F; Rangel Decl. ¶, Ex. D.) As of May 26, 2015, Plaintiff was scheduled for a follow-up with Dr. Akanno on May 28, 2015. Dr. Feinberg opines that the record shows no episodes of Rangel delaying evaluation of Plaintiff by his primary care physician. (Feinberg Decl. ¶ 34(c), Ex. F.) Based on the evidence presented, there is no genuine issue of material fact to support the finding that Defendant Rangel was deliberately indifferent, and he is therefore entitled to summary judgment.

///
///
///

### 3. Defendant Nurse Practitioner Manasrah

On May 29, 2015, Plaintiff saw Defendant Manasrah and requested pain medication and a low bunk chrono. Plaintiff claims that Manasrah said he needed to order an x-ray before pain medications were given. Plaintiff contends the x-rays show fracture and arthritis. Plaintiff argues that Manasrah was deliberately indifferent on December 2014, on January 5, 2015, and January 10, 2016, by denying his low bunk chrono and medication.

On January 15, 2015, Nurse Practitioner Manasrah saw Plaintiff for an inmate appeal requesting a low bunk chrono and for history of wrist and ulnar pain. (Manasrah Decl. at ¶ 6, Ex. A; Feinberg Decl. ¶ 19, Ex. F.) It is undisputed that Plaintiff was in no acute distress as evidenced by his vital signs and on examination, there was no medical indication for low bunk chrono because Plaintiff had normal gait and hand grip strength was 5/5 which is normal. (Manasrah Decl. at ¶ 6, Ex. A; Feinberg Decl. ¶ 19, Ex. F.) Dr. Feinberg opines that when Plaintiff was seen by Manasrah on January 15, 2015, he was properly examined and found to have no ongoing medical conditions or limitations that would justify a low bunk chrono. (Feinberg Decl. ¶ 34b.) Plaintiff also did not request any pain medication at this visit. (Feinberg Decl. ¶ 34b.) Indeed, Plaintiff did not make any requests for a low bunk chrono or pain medication until many months thereafter. (Feinberg Decl. ¶ 34b, Ex. F.) There is no evidence he made such request at his appointment on April 3, 2915, with the primary care physician or within several health service request forms (CDCR 7362) submitted in April and early May 2015. (Feinberg Decl. ¶ 34b, Ex. F.)

On May 22, 2015, Plaintiff was seen again by Nurse Practitioner Manasrah who gave orders to transport Plaintiff to the TTA for a laceration to the back of the scalp with scant bleeding. (Feinberg Decl. ¶ 21, Ex. F.) There is no evidence that Plaintiff had a serious medical need at anytime he was examined by Manasrah other than on May 22, 2015, when Manasrah referred Plaintiff to TTA for his head wound. There is no evidence to support Plaintiff's claim that he reinjured his back or left shoulder as a result of the May 22, 2015, fall. (Feinberg Decl. ¶ 34b, Ex. F.) All of the subsequent x-rays have consistently shown stable old healed L2, L3, and L4 transverse spinous process fractures, and arthritis of the left glenohumeral shoulder joint present since at least January 2013. (Feinberg Decl. ¶¶ 26, 34b, Ex. F.)

The medical records further demonstrate that Plaintiff did not have a qualifying condition to warrant a low bunk chrono or pain medications on February 25, 2014, March 7, 2014, September 2, 2014 or December 15, 2014, when he saw Manasrah. (Feinberg Decl. ¶ 34b, Ex. F.) Nor does Plaintiff submit any health service request forms with any such concerns during this time. (Feinberg Decl. ¶ 34b, Ex. F.) Although Defendant may not have provided Plaintiff with the specific care he desired—a lower bunk accommodation and additional pain medication—Plaintiff was promptly provided with medical evaluations and appropriate treatment. Accordingly, there is not genuine issue of material fact and Defendant Manasrah is entitled to summary judgment.

4. <u>Defendant Dr. Spaeth</u>

Plaintiff contends that Dr. Spaeth denied his inmate appeal for a low bunk chrono. Plaintiff argues that Dr. Spaeth was deliberately indifferent on January 29, 2015 and July 29, 2015, by denying his appeal.

Plaintiff admits that Dr. Spaeth did not see him as a patient and her involvement with Plaintiff is limited to review of Physician Assistant Obguehi's response at the first level review of Plaintiff's inmate appeal KVSP HC 15036436. (Spaeth Decl. ¶ 3, Ex. B; Pl. Dep. at 66:22-67:23.) Dr. Spaeth was not involved in any other aspect of Plaintiff's appeal KVSP HC 15036436. Because it is undisputed that Plaintiff never qualified for a low bunk chrono, there is no basis to find that Dr. Spaeth was deliberately indifferent by determining that Physician Assistant Obguehi's response at the first level was appropriate. (Feinberg Decl. ¶ 28, Ex. F.) Accordingly, Defendant Spaeth is entitled to summary judgment.

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendants Manasrah, Ogun, Rangel and Spaeth.

///
///
///

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 17, 2018**

UNITED STATES MAGISTRATE JUDGE